# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

IN RE:
CYNTHIA DEAVER FORSMAN, A/K/A
CYNTHIA D FORSMAN A/K/A CYNDI
M SEAY A/K/A CYNTHIA DEAVER-
SEAY

BCN#: 19-50909-RBC
Chapter: 13

_____Debtor_____

Carrington Mortgage Services, LLC
or present noteholder,

      Movant/Secured Creditor,

v.

CYNTHIA DEAVER FORSMAN, A/K/A
CYNTHIA D FORSMAN A/K/A CYNDI
M SEAY A/K/A CYNTHIA DEAVER-
SEAY

      Debtor

and

ANGELA M. SCOLFORO (499275)

      Trustee
      Respondents

**MOTION FOR ORDER GRANTING RELIEF
FROM AUTOMATIC STAY**

    Carrington Mortgage Services, LLC, and/or present noteholder, (Movant herein), alleges

as follows:

    1.    The Bankruptcy Court has jurisdiction over this contested matter pursuant to 28

U.S.C. §157 and §1334; 11 U.S.C. §362.

    2.    The above named Debtor filed a Chapter 13 Petition in Bankruptcy with this Court

on October 17, 2019.

William M. Savage, Esquire
VSB #26155
Gregory N. Britto, Esquire
VSB #23746
Bryce Robertson, Esquire
VSB #86008
LOGS Legal Group LLP
10021 Balls Ford Road, Suite 200
Manassas, VA 20109
(703) 449-5800  19-284548

3.      Angela M. Scolforo (499275), Trustee, has been appointed by this Court as the Chapter 13 Trustee in this instant Bankruptcy proceeding.

4.      Movant is the current payee of a promissory note secured by a deed of trust upon a parcel of real property with the address of 72 Lofty Circle, Stuarts Draft, VA 24477 and more particularly described in the Deed of Trust dated June 29, 2012 and recorded as Deed Instrument Number 120005572, in the Clerk's Office of Augusta County, as:

> ALL THAT CERTAIN LOT OR PARCEL OF LAND, SITUATE IN THE RIVERHEADS DISTRICT OF AUGUSTA COUNTY, VIRGINIA, DESIGNATED AS LOT 150, AS SHOWN ON A PLAT ENTITLED "SUBDIVISION PLAT FOR OVERLOOK, PHASE 2, RIVERHEADS DISTRICT, AUGUSTA COUNTY, VIRGINIA", MADE BY PAUL D. JULIAN, LAND SURVEYOR, DATED OCTOBER 18, 2010, REVISED NOVEMBER 18, 2010, RECORDED IN THE CLERK'S OFFICE OF THE CIRCUIT COURT OF AUGUSTA COUNTY, VIRGINIA, IN PLAT BOOK 1, PAGES 7932 AND 7933. BEING THE SAME PROPERTY CONVEYED TO ROBERT L. FORSMAN AND CYNTHIA D. FORSMAN, HUSBAND AND WIFE BY DEED FROM LOFTON LEASING, LLC DATED JUNE 28TH, 2012 AND RECORDED IN THE CLERK'S OFFICE OF THE CIRCUIT COURT OR AUGUSTA COUNTY 'VIRGINIA, IMMEDIATELY PRIOR HERETO.

5.      Movant is informed and believes and, based upon such information and belief, alleges that title to the subject Property is currently vested in the name of the Debtor.

6.      The Debtor is in default with regard to payments which have become due under the terms of the aforementioned note and deed of trust since the filing of the Chapter 13 Petition.  As of April 19, 2023, the Debtor is due for:

o      3 post-petition monthly payments from February 2023 through April 2023 of $826.29 each which were to be paid directly to Movant;

o      Suspense Balance of                                        -$0.71

7.      As of April 19, 2023, the unpaid principal balance on the said note is $132,646.63.

8.      Movant has elected to initiate foreclosure proceedings on the Property with respect to the subject Trust Deed but is prevented by the Automatic Stay from going forward with these proceedings.

9.      Continuation of the automatic stay of 11 U.S.C. § 362(a) will work real and irreparable harm and deprive the Movant of the adequate protection to which it is entitled under 11 U.S.C. § 362 due to the aforementioned facts.

WHEREFORE, Movant prays for an order granting relief from Automatic Stay, that the 14 day waiting period imposed by F.R.B.P. 4001(a)(3) be waived in this instant bankruptcy proceeding only, and for such other relief as the court may deem meet and proper.

Dated:    April 28, 2023

LOGS Legal Group LLP
Attorneys for Movant

By:    /s/ Bryce Robertson
William M. Savage, Esquire
VSB #26155
Gregory N. Britto, Esquire
VSB #23746
Bryce Robertson, Esquire
VSB #86008
LOGS LEGAL GROUP LLP
10021 Balls Ford Road, Suite 200
Manassas, VA 20109
(703) 449-5800
logsecf@logs.com      19-284548

## CERTIFICATE OF SERVICE

I hereby certify that on the ___28th___ day of _____April_____, ___2023___ the following person(s) were served a copy of the foregoing in the manner described below:

Via CM/ECF Electronic Notice:

Roland S. Carlton, Jr., Carlton Legal Services, PLC                    Debtor's Attorney
118 MacTanly Place
Staunton, VA 24401

Angela M. Scolforo (499275)                                                      Chapter 13 Trustee
Office of the Chapter 13 Trustee
123 East Main Street
Suite 310
Charlottesville, VA 22902

Via First Class Mail, Postage Prepaid:

Cynthia Deaver Forsman a/k/a Cynthia D Forsman a/k/a Cyndi M        Debtor(s)
Seay a/k/a Cynthia Deaver-Seay
72 Lofty Circle
Stuarts Draft, VA 24477

                                                     /s/ Bryce Robertson
                                                     William M. Savage, Esquire
                                                     VSB #26155
                                                     Gregory N. Britto, Esquire
                                                     VSB #23746
                                                     Bryce Robertson, Esquire
                                                     VSB #86008
                                                     LOGS LEGAL GROUP LLP
                                                     10021 Balls Ford Road, Suite 200
                                                     Manassas, Virginia 20109
                                                     (703) 449-5800
                                                     logsecf@logs.com        19-284548

William M. Savage, Esquire
VSB #26155
Gregory N. Britto, Esquire
VSB #23746
Bryce Robertson, Esquire
VSB #86008
LOGS Legal Group LLP
10021 Balls Ford Road, Suite 200
Manassas, VA 20109
(703) 449-5800  19-284548

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

IN RE:                                                     BCN#: 19-50909-RBC
CYNTHIA DEAVER FORSMAN, A/K/A                              Chapter: 13
CYNTHIA D FORSMAN A/K/A CYNDI
M SEAY A/K/A CYNTHIA DEAVER-
SEAY

_____Debtor_____
Carrington Mortgage Services, LLC
or present noteholder,


        Movant/Secured Creditor,
v.
CYNTHIA DEAVER FORSMAN, A/K/A
CYNTHIA D FORSMAN A/K/A CYNDI
M SEAY A/K/A CYNTHIA DEAVER-
SEAY


        Debtor
and
ANGELA M. SCOLFORO (499275)


        Trustee
        Respondents

NOTICE IS HEREBY GIVEN THAT:

    A hearing upon the captioned motion will be held at 9:30 AM on___June 15, 2023_____, by
video conference via Zoom.



                    Meeting ID:  160 369 2643

            URL:  https://vawb-uscourts-gov.zoomgov.com/j/1603692643



William M. Savage, Esquire
VSB #26155
Gregory N. Britto, Esquire
VSB #23746
Bryce Robertson, Esquire
VSB #86008
LOGS Legal Group LLP
10021 Balls Ford Road, Suite 200
Manassas, VA 20109
(703) 449-5800  19-284548

I certify that I have this __28th__ day of _____April_____, 20 _23_, electronically transmitted and/or mailed by first class mail, postage pre-paid, a true copy of the foregoing Notice to the following:

Roland S. Carlton, Jr., Carlton Legal Services, PLC
118 MacTanly Place
Staunton, VA 24401

Angela M. Scolforo (499275)
Office of the Chapter 13 Trustee
123 East Main Street
Suite 310
Charlottesville, VA 22902

Cynthia Deaver Forsman a/k/a Cynthia D Forsman a/k/a Cyndi M Seay a/k/a Cynthia Deaver-Seay
72 Lofty Circle
Stuarts Draft, VA 24477

/s/ Bryce Robertson
William M. Savage, Esquire
VSB #26155
Gregory N. Britto, Esquire
VSB #23746
Bryce Robertson, Esquire
VSB #86008



Commonwealth of Virginia            **ADJUSTABLE RATE NOTE**



June 29, 2012

**72 LOFTY CIRCLE**
**STUARTS DRAFT, VIRGINIA 24477**
(Property Address)

**1. PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **SUMMIT MORTGAGE CORPORATION, A CORPORATION** and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of **TWO HUNDRED TWELVE THOUSAND THREE HUNDRED SEVENTY-SEVEN AND NO/100** Dollars (U.S. **$212,377.00**), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at a rate of **TWO AND ONE FOURTH** percent (**2.250%**) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5(C) of this Note.

**3. PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the 1st day of each month beginning on **August 2012.** Any principal and interest remaining on the 1st day of **July, 2042**, will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at

**SUMMIT MORTGAGE CORPORATION**
**13355 10TH AVENUE N. SUITE 100**
**PLYMOUTH, MINNESOTA 55441**
or at such other place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Initially, each monthly payment of principal and interest will be in the amount of U.S. **$811.80.** This amount will be part of a larger monthly payment required by the Security Instrument that shall be applied to principal, interest and other items in the order described in the Security Instrument. This amount may change in accordance with Paragraph 5(E) of this Note.

VMP-590(VA) (0508)                Page 1 of 4

Borrower(s) Initials _____

**5. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

   **(A) Change Date**

   The interest rate may change on the 1st day of October, 2017 and on that day of each succeeding year. "Change Date" means each date on which the interest rate could change.

   **(B) The Index**

   Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary (as defined in Paragraph 7(B)). Lender will give Borrower notice of the new Index.

   **(C) Calculation of Interest Rate Changes**

   Before each Change Date, Lender will calculate a new interest rate by adding a margin of **TWO AND NO/100** percentage point(s) **(2.000%)** to the Current Index and rounding the sum to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Paragraph 5(D) of this Note, this rounded amount will be the new interest rate until the next Change Date.

   **(D) Limits on Interest Rate Changes**

   The existing interest rate will never increase or decrease by more than **ONE** percentage point(s) **(1.000%)** on any single Change Date. The interest rate will never be more than **FIVE** percentage points **(5.000%)** higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

   **(E) Calculation of Payment Change**

   If the interest rate changes on a Change Date, Lender will calculate the amount of monthly payment of principal and interest which would be necessary to repay the unpaid principal balance in full at the Maturity Date at the new interest rate through substantially equal payments. In making such calculation, Lender will use the unpaid principal balance which would be owed on the Change Date if there had been no default in payment on the Note, reduced by the amount of any prepayments to principal. The result of this calculation will be the amount of the new monthly payment of principal and interest.

   **(F) Notice of Changes**

   Lender will give notice to Borrower of any change in the interest rate and monthly payment amount. The notice must be given at least 25 days before the new monthly payment amount is due, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the new monthly payment amount, (vi) the Current Index and the date it was published, (vii) the method of calculating the change in monthly payment amount, and (viii) any other information which may be required by law from time to time.

   **(G) Effective Date of Changes**

   A new interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date. Borrower shall make a payment in the new monthly amount beginning on the first payment date which occurs at least 25 days after Lender has given Borrower the notice of changes required by Paragraph 5(F) of this Note. Borrower shall have no obligation to pay any increase in the monthly payment amount calculated in accordance with Paragraph 5(E) of this Note for any payment date occurring less than 25 days after Lender has given the required notice. If the monthly payment amount calculated in accordance with Paragraph 5(E) of this Note decreased, but Lender failed to give timely notice of the decrease and Borrower made any monthly payment amounts exceeding the payment amount which should have been stated in a timely notice, then Borrower has the option to either (i) demand the return to Borrower of any excess payment, with interest thereon at the Note rate (a rate equal to the interest rate which should have been stated in a timely notice), or (ii) request that any excess payment, with interest thereon at the Note rate, be applied as payment of principal. Lender's obligation to return any excess payment with interest on demand is not assignable even if this Note is otherwise assigned before the demand for return is made.

Borrower(s) Initials _____

**6. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**7. BORROWER'S FAILURE TO PAY**

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of **FIFTEEN** calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR** percent (**4.000%**) of the overdue amount of each payment.

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default.

This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**8. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor and waive the homestead exemption. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**9. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**10. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

---

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)        _____ (Seal)
ROBERT L. FORSMAN                -Borrower                                     -Borrower

This is to certify that this is the Note described in and secured by a Deed of Trust dated June 29, 2012, on the Property located in
AUGUSTA County, Virginia.

My Commission Expires: 4/30/13

_____
Notary Public

Pay to the order of   JP Morgan Chase Bank, N.A.

Without Recourse

SUMMIT MORTGAGE CORPORATION, A CORPORATION

By : _____

Its: _ASSISTANT VICE PRESIDENT

Pay to the Order of:
Without Recourse
JPMorgan Chase Bank, N.A.
By: _____
Christopher Randle / Asst Secretary

I20005572    PG 0218   JUN 29

WHEN RECORDED, MAIL TO:
**SUMMIT MORTGAGE CORPORATION**
**13355 10TH AVENUE N. SUITE 100**
**PLYMOUTH, MINNESOTA 55441**

**This instrument was prepared by:**
**SUMMIT MORTGAGE CORPORATION**
**13355 10TH AVENUE N. SUITE 100**
**PLYMOUTH, MINNESOTA 55441**
**763-390-7200**

VA State Bar Number (if applicable):

Amount of Consideration:

Tax Map Reference Number:

Assessor's RPC/Parcel Number

_____ [Space Above This Line For Recording Data] _____

**Commonwealth of Virginia**            # DEED OF TRUST

SIS T

THIS DEED OF TRUST ("Security Instrument") is made on **June 29, 2012.**

The Grantor is **ROBERT L. FORSMAN AND CYNTHIA D. FORSMAN, HUSBAND AND WIFE,** ("Borrower").

The trustee is **WILLIAM D. TUCKER, III,**
a resident of the Commonwealth of Virginia, whose full residence or business address is
**941 GLENWOOD STATION LANE, CHARLOTTESVILLE, VIRGINIA 22901**
                                 trustees (any one of whom may act and who are referred to as ("Trustee").

The beneficiary is **Mortgage Electronic Registration Systems, Inc. ("MERS")**, (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of **Delaware,** and has an address and telephone number of **P.O. Box 2026, Flint, MI 48501-2026,** tel. **(888) 679-MERS.**

**SUMMIT MORTGAGE CORPORATION, A CORPORATION,** ("Lender")
is organized and existing under the laws of **MINNESOTA,**
and has an address of **13355 10TH AVENUE N. SUITE 100, PLYMOUTH, MINNESOTA 55441.**

Borrower owes Lender the principal sum of **TWO HUNDRED TWELVE THOUSAND THREE HUNDRED SEVENTY-SEVEN AND NO/100** Dollars (U.S. **$212,377.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **July 1, 2042.** This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c)

_____

FHA Virginia Deed of Trust – 4/96                                                    Amended 7/98
                                        Page 1 of 8
IDS, Inc.                                                        Borrower(s) Initials *rf* *CF*

the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in AUGUSTA County, Virginia:

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.**

which has the address of **72 LOFTY CIRCLE**
                         **STUARTS DRAFT, VIRGINIA 24477**, ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security

---

PG 0221 JUN 29

Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

---

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument

---

PG 0 2 2 3  JUN 29 ☼

or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender or Trustee shall give to Borrower (and owner of the Property, if a different person) notice of sale in the manner prescribed by applicable law. Trustee shall give public notice of sale by advertising, in accordance with applicable law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell**

---

FHA Virginia Deed of Trust – 4/96                                                          Amended 7/98

IDS, Inc.                                    Page 6 of 8

Borrower(s) Initials _tf_  _CF_

PG.0224  JUN 29 ☺

the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with applicable law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5.000% of the gross sale price and reasonable attorneys' fees; (b) to the discharge of all taxes, levies and assessments on the Property, if any, as provided by applicable law; (c) to all sums secured by this Security Instrument; and (d) any excess to the person or persons legally entitled to it. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Identification of Note.** The Note is identified by a certificate on the Note executed by any Notary Public who certifies an acknowledgment hereto.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider            ☐ Graduated Payment Rider    ☒ Adjustable Rate Rider
☒ Planned Unit Development Rider   ☐ Growing Equity Rider       ☐ Other:

---

FG 0 2 2 5   JUN 29 ±

**NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ -Witness          _____ -Witness

_____ (Seal)          _____ (Seal)
ROBERT L. FORSMAN        -Borrower      CYNTHIA D. FORSMAN       -Borrower

STATE OF VIRGINIA, _____ County, _Waynesboro_ (City or Town), SS:

The foregoing instrument was acknowledged before me this

__29th__ day of __June__, __2012__ by ROBERT L. FORSMAN and CYNTHIA D. FORSMAN.

My Commission Expires: ___4-30-13___

#301733
Notary Registration Number

_Beverly P. Hensley_
Notary Public

(Notary Seal: BEVERLY P. HENSLEY, NOTARY PUBLIC, REG. #301733, MY COMMISSION EXPIRES 4/30/2013, COMMONWEALTH OF VIRGINIA)

FHA Virginia Deed of Trust – 4/96                                                     Amended 7/98
                                Page 8 of 8
IDS, Inc.

PG 0226 JUN 29



# FHA PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **29th day of June, 2012**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **SUMMIT MORTGAGE CORPORATION, A CORPORATION** ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**72 LOFTY CIRCLE**
**STUARTS DRAFT, VIRGINIA 24477**
(Property Address).

The Property is a part of a planned unit development ("PUD") known as:

**OVERLOOK**
(Name of Planned Unit Development Project)

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.  So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

---

PG0227 JUN 29 ∾

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
ROBERT L. FORSMAN                -Borrower

_____ (Seal)
CYNTHIA D. FORSMAN               -Borrower

FHA — MULTISTATE PUD Rider                                      7/91
                        Page 2 of 2

IDS, Inc.



# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this **29th day of June, 2012,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument"), of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to

**SUMMIT MORTGAGE CORPORATION, A CORPORATION**
(the "Lender") of the same date and covering property described in the Security Instrument and located at:

**72 LOFTY CIRCLE
STUARTS DRAFT, VIRGINIA 24477**
(Property Address)

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A) Change Date**
   The interest rate may change on the **1st day of October, 2017,** and on that day of each succeeding year. "Change Date" means each date on which the interest rate could change.
   **(B) The Index**
   Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender

---

FHA Multistate ARM Rider 4/04

Page 1 of 3

IDS, Inc.

Borrower(s) Initials _____  _____

will use as a new Index any index prescribed by the Secretary. As used in this Rider, "Secretary means the Secretary of Housing and Urban Development or his or her designee." Lender will give Borrower notice of the new Index.

**(C) Calculation of Interest Rate Changes**

Before each Change Date, Lender will calculate a new interest rate by adding a margin of **TWO** percentage point(s) **(2.000%)** to the Current Index and rounding the sum to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in paragraph (D) of this Rider, this rounded amount will be the new interest rate until the next Change Date.

**(D) Limits on Interest Rate Changes**

The existing interest rate will never increase or decrease by more than **ONE** percentage point(s) **(1.000%)** on any single Change Date. The interest rate will never be more than **FIVE** percentage points **(5.000%)** higher or lower than the initial interest rate stated in Paragraph 2 of the Note.

**(E) Calculation of Payment Change**

If the interest rate changes on a Change Date, Lender will calculate the amount of monthly payment of principal and interest which would be necessary to repay the unpaid principal balance in full at the Maturity Date at the new interest rate through substantially equal payments. In making such calculation, Lender will use the unpaid principal balance which would be owed on the Change Date if there had been no default in payment on the Note, reduced by the amount of any prepayments to principal. The result of this calculation will be the amount of the new monthly payment of principal and interest.

**(F) Notice of Changes**

Lender will give notice to Borrower of any change in the interest rate and monthly payment amount. The notice must be given at least 25 days before the new monthly payment amount is due, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the new monthly payment amount, (vi) the Current Index and the date it was published, (vii) the method of calculating the change in monthly payment amount, and (viii) any other information which may be required by law from time to time.

**(G) Effective Date of Changes**

A new interest rate calculated in accordance with paragraphs (C) and (D) of this Rider will become effective on the Change Date. Borrower shall make a payment in the new monthly amount beginning on the first payment date which occurs at least 25 days after Lender has given Borrower the notice of changes required by paragraph (F) of this Rider. Borrower shall have no obligation to pay any increase in the monthly payment amount calculated in accordance with paragraph (E) of this Rider for any payment date occurring less than 25 days after Lender has given the required notice. If the monthly payment amount calculated in accordance with paragraph (E) of this Rider decreased, but Lender failed to give timely notice of the decrease and Borrower made any monthly payment amounts exceeding the payment amount which should have been stated in a timely notice, then Borrower has the option to either (i) demand the return to Borrower of any excess payment, with interest thereon at the Note rate (a rate equal to the interest rate which should have been stated in a timely notice), or (ii) request that any excess payment, with interest

---

FHA Multistate ARM Rider 4/04

IDS, Inc.

Borrower(s) Initials ʃ̢ C C

PG 0230 JUN 29 ♀

thereon at the Note rate, be applied as payment of principal. Lender's obligation to return any excess
payment with interest on demand is not assignable even if the Note is otherwise assigned before the
demand for return is made.

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Adjustable Rate Rider.

_____ (Seal)      _____ (Seal)
ROBERT L. FORSMAN    -Borrower       CYNTHIA D. FORSMAN    -Borrower

FHA Multistate ARM Rider 4/04

                 Page 3 of 3

IDS, Inc.

PG 0231 JUN 29 '12

SCHEDULE A

All that certain lot or parcel of land, situate in the Riverheads District of Augusta County, Virginia, designated as Lot 150, as shown on a plat entitled "Subdivision Plat For Overlook, Phase 2, Riverheads District, Augusta County, Virginia", made by Paul D. Julian, Land Surveyor, dated October 18, 2010, revised November 18, 2010, recorded in the Clerk's Office of the Circuit Court of Augusta County, Virginia, in Plat Book 1, pages 7932 and 7933.

BEING the same property conveyed to Robert L. Forsman and Cynthia D. Forsman, husband and wife by deed from Lofton Leasing, LLC dated June 28th, 2012 and recorded in the Clerk's Office of the Circuit Court of Augusta County Virginia, immediately prior hereto.

INSTRUMENT #120005572
RECORDED IN THE CLERK'S OFFICE OF
AUGUSTA COUNTY ON
JUNE 29, 2012 AT 02:19PM

JOHN B. DAVIS, CLERK
RECORDED BY: SCS

**CONFIDENTIAL**

190002976

## NOTICE OF CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SUMMIT MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026) by these presents does convey, grant, assign, transfer and set over the described Deed of Trust together with all interest secured thereby, all liens, and any rights due or to become due thereon to CARRINGTON MORTGAGE SERVICES, LLC, WHOSE ADDRESS IS 1600 S. DOUGLASS RD SUITE 200-A, ANAHEIM, CA 92806 (949)517-5235, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)

Said Deed of Trust is dated 06/29/2012 and was made by ROBERT L. FORSMAN AND CYNTHIA D. FORSMAN to WILLIAM D. TUCKER, III trustee, and recorded in Instrument # 120005872 in the amount of $212,377.00 in the office of the Recorder of (Town/City) STUARTS DRAFT, County of AUGUSTA, Virginia.

IN WITNESS WHEREOF, this Assignment is executed this 29th day of April in the year 2019
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SUMMIT MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS

*TFR*

**TIFFANY FLOYD**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 29th day of April in the year 2019, by Tiffany Floyd as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SUMMIT MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

*Julie Martens*

**JULIE MARTENS**
**COMM EXPIRES: 5/22/2022**

> JULIE MARTENS
> Notary Public - State of Florida
> Commission # GG 221059
> My Comm. Expires May 22, 2022
> Bonded through National Notary Assn.

Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
When Recorded Return To: Carrington Mortgage Services, C/O Nationwide Title Clearing, Inc. 2100 Alt. 19 North, Palm Harbor, FL 34683

Page 1
MERS

**CONFIDENTIAL**

INSTRUMENT # 190002976
E-RECORDED IN THE CLERK'S OFFICE OF
AUGUSTA ON
APRIL 30, 2019 AT 09:10AM

GINA R COFFEY, CLERK
RECORDED BY: RLK

This Document Prepared By:
**MONICA  VELA**
**CARRINGTON MORTGAGE SERVICES, LLC**
**CARRINGTON DOCUMENT SERVICES**
**ANAHEIM, CA 92806**
**1-866-874-5860**

When Recorded Mail To:
**CARRINGTON MORTGAGE SERVICES, LLC**
**CARRINGTON DOCUMENT SERVICES**
**1600 SOUTH DOUGLASS ROAD, SUITE 200A**
**ANAHEIM, CA  92806**

Tax Map Number: ▮▮▮▮▮
_____ [Space Above This Line for Recording Data] _____
Original Principal Amount: $212,377.00          FHA/VA/RHS Case No:
Unpaid Principal Amount: $179,405.19          ▮▮▮▮▮▮
New Principal Amount: $131,758.44          Loan No: ▮▮▮▮
New Money (Cap): $0.00

# LOAN MODIFICATION AGREEMENT (DEED OF TRUST)

### Tax Exempt per Virginia State Code 58.1-803(D) or 58.1-809
### taxes paid at instrument # 120005572

This Loan Modification Agreement ("Agreement"), made this **5TH** day of **JUNE, 2019**, between **CYNTHIA D. FORSMAN** ("Borrower"), whose address is **72 LOFTY CIR , STUARTS DRAFT, VIRGINIA 24477** and **CARRINGTON MORTGAGE SERVICES, LLC** ("Lender"), whose address is **1600 SOUTH DOUGLASS ROAD, SUITE 200A,  ANAHEIM, CA 92806** amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated **JUNE 29, 2012** and recorded on **JUNE 29, 2012** in **INSTRUMENT NO. 120005572, AUGUSTA COUNTY, VIRGINIA,** and (2) the Note, in the original principal amount of U.S. **$212,377.00, bearing the same date as,** and secured by, the Security

Carrington Custom HUD-HAM ▮▮▮▮▮

Page 1

Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at
**72 LOFTY CIR , STUARTS DRAFT, VIRGINIA 24477**

the real property described is located in **AUGUSTA COUNTY, VIRGINIA** and being set forth as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of, **JUNE 1, 2019** the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$131,758.44**, consisting of the amount(s) loaned to Borrower by Lender, plus capitalized interest in the amount of U.S. **$0.00** and other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been accrued for work completed. **This Unpaid Principal Balance has been reduced by the HUD Partial Claim amount of $54,062.39.**

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.7500%**, from **JUNE 1, 2019**. The yearly rate of **4.7500%** will remain in effect until principal and interest are paid in full.

   Borrower promises to make the total modified monthly mortgage payment of U.S. **$1,020.70**, beginning on the **1ST** day of **JULY, 2019**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. Borrower's payment consists of payments for principal and interest of U.S. **$687.32**, plus payments for property taxes, hazard insurance, and any other permissible escrow items of US **$333.38**. Borrower understands that the modified monthly mortgage payment is subject to change if there is an increase or decrease in property taxes, insurance, or any other permissible escrow items. The escrow payments may be adjusted periodically in accordance with applicable law and therefore the total monthly payment may change accordingly. If on **JUNE 1, 2049** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by this Security Instrument.

   If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

4. The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date specified in Paragraph No. 1 above:
   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

Carrington Custom HUD-HAM

(b)   all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. **If the Borrower is currently subject to the protections of any automatic stay in bankruptcy, or have obtained a discharge in bankruptcy proceeding without reaffirming the mortgage loan debt, nothing in this Agreement or any other document executed in connection with this Agreement shall be construed as an attempt by Lender to impose personal liability under the Note and Deed of Trust/Mortgage and Promissory Note/Partial Claims Mortgage. In such case, this Agreement is entered into in the ordinary course of business between the Lender and the Borrower in lieu of pursuit of in rem relief to enforce the lien.  This Agreement does not revive the Borrower's personal liability under the Note and Deed of Trust/Mortgage and Promissory Note/Partial Claims Mortgage, nor is it an attempt to collect, recover or offset any such debt as a personal liability of Borrower under the Note and Deed of Trust/Mortgage and Promissory Note/Partial Claims Mortgage.**

6.   Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

7.   Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

8.   Borrower agrees that any costs, fees and/or expenses incurred in connection with servicing the loan that may be legally charged to the account, but have not been charged to the account as of the Modification Effective Date, may be charged to the account at a later date and shall be the Borrower's responsibility to pay in full.  For example, if the loan is in foreclosure there may be foreclosure fees and costs that have been incurred but not yet assessed to the account as of the date the Modification Effective Date; Borrower will remain liable for any such costs, fees and/or expenses.

Carrington Custom HUD-HAM█████████████

In Witness Whereof, I have executed this Agreement.

_Cynthia D. Forsman_                                              6|12|19
Borrower: **CYNTHIA D. FORSMAN**                                    **Date**

_____ [Space Below This Line for Acknowledgments] _____

**BORROWER ACKNOWLEDGMENT**

> SONYA CARTER CRIDER
> NOTARY PUBLIC
> REGISTRATION # 7653914
> COMMONWEALTH OF VIRGINIA
> MY COMMISSION EXPIRES

State of **VIRGINIA**

County of WAYNESBORO

The foregoing instrument was acknowledged before me this _12Th day of June 2019_ (date) by
**CYNTHIA D. FORSMAN** (name of person acknowledged)

_Sonya Carter Crider_
Notary Public

Printed Name: _Sonya Carter Crider_

My commission expires: _07|31|2019_

In Witness Whereof, the Lender has executed this Agreement.

**CARRINGTON MORTGAGE SERVICES, LLC**

JUN 1 7 2019

By _____          (print name)          Date
                                                             (title)
Jill A. Fuller Director Loss Mitigation
Carrington Mortgage Services, LLC
_____ [Space Below This Line for Acknowledgments] _____

**LENDER ACKNOWLEDGMENT**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _____    )
County of _____   )

On _____ before me _____ Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____                                    (Seal)
            Signature of Notary Public

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other office completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of  California                    }

County of  Orange                    }

On  06/17/19  before me,  _____ MARISSA BIEL _____ NOTARY PUBLIC,
                                                      (Here insert name and title of the officer)

personally appeared  Jill A. Fuller _____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

> MARISSA BIEL
> Notary Public - California
> Orange County
> Commission # 2273646
> My Comm. Expires Dec 31, 2022

Notary Public Signature  *Marissa Biel*
MARISSA BIEL                                  (Notary Public Seal)

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

_____

_____
(Title or description of attached document)

_____

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date _____

### CAPACITY CLAIMED BY THE SIGNER

☐ Individual(s)
☐ Corporate Officer

_____
(Title)

☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

### INSTRUCTIONS FOR COMPLETING THIS FORM

*This form complies with current California statutes regarding notary wording and, if needed, should be completed and attached to the document. Acknowledgments from other states may be completed for documents being sent to that state so long as the wording does not require the California notary to violate California notary law.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is/are) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.

OrderID-454175

2015 Version

**EXHIBIT A**

**BORROWER(S):  CYNTHIA  D. FORSMAN**

**LOAN NUMBER:** ███████

**LEGAL DESCRIPTION:**

The land referred to in this document is situated in the STATE OF VIRGINIA, COUNTY OF AUGUSTA, CITY OF STUARTS DRAFT, and described as follows:

ALL THAT CERTAIN LOT OR PARCEL OF LAND, WITH ALL IMPROVEMENTS THEREON AND APPURTENANCES THERETO BELONGING, SITUATE IN RIVERHEADS DISTRICT, AUGUSTA COUNTY, VIRGINIA, KNOWN BY PRESENT STREET NUMBERING AS 72 LOFTY CIRCLE, STUARTS
DRAFT, AND DESIGNATED AS LOT 150 AS SHOWN ON PLAT ENTITLED "SUBDIVISION PLAT FOR OVERLOOK, PHASE 2, RIVERHEADS DISTRICT, AUGUSTA COUNTY, VIRGINIA," MADE BY
PAUL D. JULIAN, LAND SURVEYOR, DATED OCTOBER 18, 2010, AND LAST REVISED ON NOVEMBER 18, 2010, OF RECORD IN THE CLERK'S OFFICE OF THE CIRCUIT COURT OF AUGUSTA COUNTY, VIRGINIA, WITH DEED OF DEDICATION RECORDED AS INSTRUMENT NO.
100010372 AND IN PLAT BOOK 1, PAGES 7932 AND 7933.

ALSO KNOWN AS: 72 LOFTY CIR , STUARTS DRAFT, VIRGINIA 24477

Carrington Custom HUD-HAMI ███████

JUNE 19, 2019 AT 01:42PM

GINA R COFFEY, CLERK

RECORDED BY: SMP

This Document Prepared By:
**BRANDY  MANGALINDAN**
~~CARRINGTON MORTGAGE SERVICES, LLC~~
**CARRINGTON DOCUMENT SERVICES**
**ANAHEIM, CA 92806**
**1-866-874-5860**

When Recorded Mail To:
**CARRINGTON MORTGAGE SERVICES, LLC**
**C/O LOSS MITIGATION POST CLOSING DEPARTMENT**
**1600 SOUTH DOUGLASS ROAD, SUITE 200A**
**ANAHEIM, CA  92806**

_____ **[Space Above This Line for Recording Data]**
**Original Principal Amount: $212,377.00**
**Unpaid Principal Amount: $127,774.79**
**New Principal Amount: $134,452.56**
**New Money (Cap): $6,677.77**

# LOAN MODIFICATION AGREEMENT

**Tax Exempt per Virginia State Code 58.1-803(D) or 58.1-809**
**taxes paid at instrument # 120005572**

This Loan Modification Agreement ("Agreement"), made this **11TH** day of **MARCH, 2022**, between **CYNTHIA D FORSMAN** ("Borrower"), whose address is **72 LOFTY CIR, STUARTS DRAFT, VIRGINIA 24477** and **WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF STANWICH MORTGAGE LOAN TRUST F, BY CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND ATTORNEY IN FACT** ("Lender"), whose address is **1600 SOUTH DOUGLASS ROAD, SUITE 200A,  ANAHEIM, CA 92806** amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated **JUNE 29, 2012** and recorded on **JUNE 29, 2012** in **INSTRUMENT NO. 120005572, AUGUSTA COUNTY, VIRGINIA**, and (2) the Note, in the original principal amount of

U.S. **$212,377.00, bearing the same date as,** and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at **72 LOFTY CIR, STUARTS DRAFT, VIRGINIA 24477**

the real property described is located in AUGUSTA County, VIRGINIA and being set forth as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of, **APRIL 1, 2022** the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$134,452.56**, consisting of the amount(s) loaned to Borrower by Lender, plus capitalized interest in the amount of U.S. **$6,677.77** and other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been accrued for work completed.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **3.8750%**, from **APRIL 1, 2022**. The yearly rate of **3.8750%** will remain in effect until principal and interest are paid in full.

   Borrower promises to make the total modified monthly mortgage payment of U.S. **$815.79**, beginning on the **1ST** day of **MAY, 2022**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. Borrower's payment consists of payments for principal and interest of U.S. **$632.25**, plus payments for property taxes, hazard insurance, and any other permissible escrow items of US **$183.54**. Borrower understands that the modified monthly mortgage payment is subject to change if there is an increase or decrease in property taxes, insurance, or any other permissible escrow items. The escrow payments may be adjusted periodically in accordance with applicable law and therefore the total monthly payment may change accordingly. If on **APRIL 1, 2052** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by this Security Instrument.

   If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

4. The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date specified in Paragraph No. 1 above:
   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and
   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed

to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. **If the Borrower is currently subject to the protections of any automatic stay in bankruptcy, or have obtained a discharge in bankruptcy proceeding without reaffirming the mortgage loan debt, nothing in this Agreement or any other document executed in connection with this Agreement shall be construed as an attempt by Lender to impose personal liability under the Note and Deed of Trust/Mortgage. In such case, this Agreement is entered into in the ordinary course of business between the Lender and the Borrower in lieu of pursuit of in rem relief to enforce the lien. This Agreement does not revive the Borrower's personal liability under the Note and Deed of Trust/Mortgage, nor is it an attempt to collect, recover or offset any such debt as a personal liability of Borrower under the Note and Deed of Trust/Mortgage.**

6. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

7. Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

8. Borrower agrees that any costs, fees and/or expenses incurred in connection with servicing the loan that may be legally charged to the account, but have not been charged to the account as of the Modification Effective Date, may be charged to the account at a later date and shall be the Borrower's responsibility to pay in full. For example, if the loan is in foreclosure there may be foreclosure fees and costs that have been incurred but not yet assessed to the account as of the date the Modification Effective Date; Borrower will remain liable for any such costs, fees and/or expenses.

9. **This Agreement modifies an obligation secured by an existing security instrument recorded in AUGUSTA County, VIRGINIA, upon which all recordation taxes have been paid. As of the date of this Agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $127,774.79. The principal balance secured by the existing security instrument as a result of this Agreement is $134,452.56, which amount represents the excess of the unpaid principal balance of this original obligation.**

In Witness Whereof, I have executed this Agreement.

_Cynthia D. Forsman_                                    3/22/22

Borrower: **CYNTHIA D FORSMAN**                          **Date**

_____[Space Below This Line for Acknowledgments]_____

**BORROWER ACKNOWLEDGMENT**

State of **VIRGINIA**

County of _Augusta_

The foregoing instrument was acknowledged before me this _22 March 2022_
(date) by **CYNTHIA D FORSMAN** (name of person acknowledged)

_Rebecca D. Armstrong_

Notary Public

Printed Name: _Rebecca D. Armstrong_

My commission expires: _April 30, 2024_

In Witness Whereof, the Lender has executed this Agreement.

**WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF STANWICH MORTGAGE
LOAN TRUST F, BY CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND
ATTORNEY IN FACT**

_____     APR 0 5 2022
By Terrence Morley, Director, Loss Mitigation    (print name)     _____
Carrington Mortgage Services, LLC Attorney in Fact (title)                Date

_____ [Space Below This Line for Acknowledgments] _____

## LENDER ACKNOWLEDGMENT

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of _____ )
County of _____ )   SEE ATTACHED

On _____ before me _____Notary
Public, personally appeared _____, who proved to me on
the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.        SEE ATTACHED

Signature_____              (Seal)
                Signature of Notary Public

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other office completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of __California__ }

County of __Orange__ }

On __04/05/2022__ before me, __MARK M. CASTILLO__ NOTARY PUBLIC,
(Here insert name and title of the office)

personally appeared __TERRENCE MORLEY__,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public Signature __MARK M. CASTILLO__

MARK M. CASTILLO
Notary Public - California
Orange County
Commission # 2362365
My Comm. Expires Jun 24, 2025

(Notary Public Seal)

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document )

_____
(Title or description of attached document continued )

Number of Pages _____ Document Date _____

### CAPACITY CLAIMED BY THE SIGNER

☐ Individual(s)
☐ Corporate Officer
_____
(Title)
☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

### INSTRUCTIONS FOR COMPLETING THIS FORM

*This form complies with current California statutes regarding notary wording and, if needed, should be completed and attached to the document. Acknowledgments from other states may be completed for documents being sent to that state so long as the wording does not require the California notary to violate California notary law.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is/are) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.

2015 Version

**EXHIBIT A**

**BORROWER(S): CYNTHIA D. FORSMAN**

████████████████████████████

**LEGAL DESCRIPTION:**

The land referred to in this document is situated in the CITY OF STUARTS DRAFT, COUNTY OF AUGUSTA, STATE OF VIRGINIA, and described as follows:

DESIGNATED AS LOT 150 AS SHOWN ON PLAT ENTITLED "SUBDIVISION PLAT FOR OVERLOOK, PHASE 2, RIVERHEADS DISTRICT, AUGUSTA COUNTY, VIRGINIA," MADE BY PAUL D. JULIAN, LAND SURVEYOR, DATED OCTOBER 18, 2010, AND LAST REVISED ON NOVEMBER 11, 2010, OF RECORD IN THE CLERK'S OFFICE OF THE CIRCUIT COURT OF AUGUSTA COUNTY, VIRGINIA, WITH DEED OF DEDICATION RECORDED AS INSTRUMENT NO. 10010372 AND IN PLAT BOOK 1, PAGES 7932 AND 7933.

ALSO KNOWN AS: 72 LOFTY CIR, STUARTS DRAFT, VIRGINIA 24477

████████████████████████████████████████████████████

Date: **MARCH 11, 2022**

Lender: **WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF STANWICH MORTGAGE LOAN TRUST F, BY CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND ATTORNEY IN FACT**

Borrower: **CYNTHIA D FORSMAN**

Property Address: **72 LOFTY CIR, STUARTS DRAFT, VIRGINIA  24477**

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

Borrower: **CYNTHIA D FORSMAN**                                          Date

Date: **MARCH 11, 2022**

Lender: **WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF STANWICH MORTGAGE LOAN TRUST F, BY CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND ATTORNEY IN FACT**

Borrower: **CYNTHIA D FORSMAN**

Property Address: **72 LOFTY CIR, STUARTS DRAFT, VIRGINIA  24477**

## ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

In consideration of **WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF STANWICH MORTGAGE LOAN TRUST F, BY CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND ATTORNEY IN FACT**

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender. Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period .

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

Borrower: **CYNTHIA D FORSMAN**                                   **Date**

## INSTRUCTIONS FOR THE NOTARY

These instructions are being provided to ensure that the loss mitigation documents are correctly executed. If any of the following steps are not completed or are completed incorrectly, the documents will be returned to the borrower for correction and/or completion.

Please complete this contact information and return it with the signed documents:

Notary Phone #: 540 946-3800    Notary Email Address: rarmstrong@mydccu.com
        Ext 3043

THE NOTARY SECTIONS MUST INCLUDE:

- The county and state.
- The date and the date must match the date of the borrower's signature.
- The Notary Public's stamp and/or seal. It must be placed on the Borrower Acknowledgment page of each set of documents and *must be legible*, not covering any written text on the document or smudged in any way.
- The commission expiration date.

TIPS TO CORRECTLY EXECUTE:

- All signatures and requested written information must be completed in BLUE or BLACK ink, only.
- No whiteout is ever permitted on any document. If a mistake is made, draw a line through the mistake, initial it and make the correction.
- When applicable, the notary must fill out the borrower's name exactly as it is printed on the borrower signature line.
- When applicable, be careful not to enter the borrower's name on the line that requires the date of execution.
- Borrowers must sign their name within the margins of the body of the document and exactly as printed below the signature line.
- In the state of Georgia, one unofficial witness signature is required. The notary in Georgia cannot sign as a witness.
- In the states of Connecticut, South Carolina, and Louisiana, two witness signatures are required. The notary in Louisiana cannot sign as a witness and must acknowledge both witnesses.
- In the state of Maryland, Prince George's County, the Office of Finance, Treasury Division, Finance Affidavit must be notarized and the applicable, required information must be initialed. All modifications require Section B and B1 be initialed. Section C should be initialed *only* if the property being modified is non-owner occupied.
- If witnesses are required, they can be the same for each borrower.
- The Lender's Acknowledgement page will be completed by Carrington Mortgage Services, LLC upon receipt of the executed documents and *should not* be notarized by the Notary Public.

Sincerely,
Carrington Document Services, LLC

*CDS is a vendor that provides clerical and administrative support to CMS and does not have the given authority to discuss any information regarding your account. CDS is not acting as an agent of the borrower(s) and does not represent CMS in connection with the negotiation or arrangement of the terms of the Loan Modification Document Package.*

# CARRINGTON

### MORTGAGE SERVICES, LLC
(NMLS ID 42069)

P.O. Box 3010 | Anaheim, CA  92803

**Notice Date:** 03/14/2022
**Carrington Mortgage Services, LLC (CMS)**
**Final Loan Documents Coversheet**

**Mortgagor Name(s):**
CYNTHIA D FORSMAN
72 LOFTY CIR
STUARTS DRAFT      VA 24477

**Property Address:**
72 LOFTY CIR
STUARTS DRAFT      VA 24477

Dear Mortgagor(s):

Enclosed please find the final Loan Modification Agreement and/or Subordinate Note/Mortgage (herein referred to as the "Documents") along with a Name Affidavit**. If you are interested in setting up Auto Draft for your new modified mortgage payments, we encourage you to visit our website at www.carringtonmortgage.com/myloan under "Payment Options" for more details on how to set up Auto Draft.

***A Name Affidavit is a document in which a person certifies all the names that have been used by the person. The name affidavit may include maiden name, married name, other names used, and all variations of the names that appear in other documents.*

**IMPORTANT!** The insurer of your loan requires that you execute the enclosed Documents, including the Name Affidavit, in the presence of a notary public.  Please note, CMS must receive your fully executed Documents, **bearing original signatures**, by no later than **03/28/2022.** Each borrower must sign exactly as the name appears on the signature line.   If there has been a change to your name since the origination of your mortgage loan (e.g. re-married, divorced) you must complete the Name Affidavit and provide supporting documents to evidence such a change. Failure to comply with these requirements may affect your eligibility and delay the process.

***Please be advised that a faxed copy of the Documents does not satisfy the Program requirements and therefore will not be accepted.***

If you have questions regarding the Documents or experience difficulty reviewing the information, please consult a Loss Mitigation Specialist by calling, 1.800.561.4567, Monday - Friday 9:00am to 7:00pm [Eastern Standard Time].

Please mail all Original Signed Documents attention to:

**Carrington Mortgage Services, LLC**
**c/o Loss Mitigation Post Closing Department**
**1600 South Douglass Road, Suites 110 & 200-A**
**Anaheim, CA  92806**

Sincerely,

Carrington Mortgage Services, LLC



**MORTGAGE SERVICES, LLC**
NMLS ID #2600

P.O. Box 3010 | Anaheim, CA  92803

**Notice Date:  03/14/2022**
**Carrington Mortgage Services, LLC (CMS)**
**Final Loan Documents Coversheet**

Dear Mortgagor(s):

Carrington Mortgage Services, LLC (CMS) requires that you complete this Name Affidavit if your name has been changed since the origination of your mortgage loan and/or does not match the name as it appears directly below and within the enclosed Documents.

**A Name Affidavit is also referred to as:**
Also Known As Certificate / AKA Statement – To show variations of your name used to execute other documents
Now Known As Certificate / NKA Statement – To show a change in name due to marriage and/or divorce

**CYNTHIA D FORSMAN**

_Cynthia D. Forsman_
Signature

THIS IS TO CERTIFY THAT MY/OUR LEGAL SIGNATURE(S) IS/ARE AS WRITTEN AND TYPED BELOW.  This signature must <u>exactly match</u> signatures on all Documents.

I, **CYNTHIA D FORSMAN,** certify that I am also known as:

_____
Print Name (Variation)

_____
Sample Signature (Variation)

_____
Print Name (Variation)

_____
Sample Signature (Variation)

STATE OF: _Virginia_

COUNTY OF: _Augusta_

Subscribed and sworn to before me this _2nd_ day of _March_ 20_22_ by _Cynthia D. Forsman_

personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_Rebecca D Armstrong_
Notary Public

Commission No: _7693163_
Commission Expiration: _April 30, 2024_

REBECCA D ARMSTRONG
NOTARY PUBLIC
REGISTRATION # 7693163
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES
4-30-2024

# 72 LOFTY CIR

| | | | |
|---|---|---|---|
| **Location** | 72 LOFTY CIR | **Parcel No.** | 083/A 9/ /150 / |
| **Acct#** | 46906 | **Owner** | FORSMAN, CYNTHIA D. |
| **Assessment** | $225,000 | **PID** | 34250 |
| **Building Count** | 1 | **Legal Description** | 83A-(9)-150 OVERLOOK PHASE 2 LOT 150 .38AC |
| **District** | 05: Riverheads | | |

## Current Value

| Assessment | | | |
|---|---|---|---|
| Valuation Year | Improvements | Land | Total |
| 2021 | $165,000 | $60,000 | $225,000 |

## Parcel Addresses

| Additional Addresses |
|---|
| No Additional Addresses available for this parcel |

## Owner of Record

| | | | |
|---|---|---|---|
| **Owner** | FORSMAN, CYNTHIA D. | **Sale Price** | $0 |
| **Co-Owner** | | **Recorded** | 2019 |
| **Address** | 72 LOFTY CIR | **Book & Page** | 0/0 |
| | STUARTS DRAFT, VA 24477 | **Sale Date** | 02/08/2019 |

## Ownership History

| Ownership History | | | | | |
|---|---|---|---|---|---|
| Owner | Sale Price | Recorded | Book & Page | Sale Date | Instrument No |
| FORSMAN, CYNTHIA D. | $0 | 2019 | 0/0 | 02/08/2019 | 190025362 |
| FORSMAN, ROBERT L. OR | $216,900 | 2012 | 0/0 | 06/29/2012 | 120005571 |
| LOFTON LEASING, LLC | $0 | 2012 | 0/0 | 01/10/2012 | 120000228 |
| OVERLOOK LAND COMPANY, LC | $0 | 2008 | 0/0 | 12/17/2010 | 080012094 |

## Building Information

**Year Built:** 2011
**Living Area:** 1,622

| Building Attributes | |
|---|---|
| **Field** | **Description** |
| Model | Residential |
| Style | Residential |
| Grade | Grade C |
| Grade Adjust | 0.10 |
| Stories | 1 |
| Num Units | 0 |
| Roof Type | Gable |
| Roof Cover | Comp Shingle |
| Exterior Wall 1 | Vinyl |
| Exterior Wall 2 | |
| Heat System | Heat Pump |
| Heat Fuel | Electric |
| AC Type | FULL |
| Interior Wall 1 | Drywall |
| Interior Wall 2 | |
| Interior Wall 3 | |
| Interior Floor 1 | Carpet |
| Interior Floor 2 | Vinyl |
| Interior Floor 3 | |
| Total Room(s) | 6 |
| Bedroom(s) | 3 |
| Full Bath(s) | 2 |
| Half Bath(s) | 0 |
| Extra Fixture(s) | 0 |
| Extra Kitchen(s) | 0 |
| Fireplace(s) | 0 |
| Stacked Fireplace(s) | 0 |
| Gas Fireplace(s) | 0 |
| Flue(s) | 0 |
| Metal Flue(s) | 0 |
| Inop Flue/FPL | 0 |
| Legacy Area | 1622 |
| Foundation | Conc/Block |
| Basement | Crawl |
| Fin Bsmt Area | 0 |

## Building Photo



(https://images.vgsi.com/photos/AugustaVAPhotos/\P046\0046906_01_01

## Building Layout



(ParcelSketch.ashx?pid=34250&bid=34250)

| Building Sub-Areas (sq ft) | | | Legend |
|---|---|---|---|
| **Code** | **Description** | **Gross Area** | **Living Area** |
| FFL | First Floor | 1,622 | 1,622 |
| DECK | Deck | 100 | 0 |
| GARB | Brick Garage | 444 | 0 |
| POR | Open Porch | 72 | 0 |
| | | 2,238 | 1,622 |

| FBM Quality | |
|---|---|
| Num Cars - Built In | 0 |
| Garage Type | Vinyl |
| Num Cars - Garage | 2 |
| Carport Type | None |
| Num Cars - Carport | 0 |
| Garage Type 2 | |
| Num Cars - Garage 2 | 0 |
| Split Foyer | No |
| Split Level | No |

## Extra Features

| Extra Features | Legend |
|---|---|
| No Data for Extra Features | |

## Land

### Land Line Valuation

lbllndfront

**Size (Acres)**   1

**Assessed Value**   $60,000

## Outbuildings

| | Outbuildings | | | | | Legend |
|---|---|---|---|---|---|---|
| Code | Description | Sub Code | Sub Description | Size | Assessed Value | Bldg # |
| DRIVE | Driveway | CON | Concrete | 1.00 UNITS | $2,000 | 1 |
| SHED | Shed | FR | Frame | 1.00 UNITS | $1,900 | 1 |
| FEN | Fence | CL | Chain Link | 1.00 UNITS | $0 | 1 |

## Valuation History

| | Assessment | | |
|---|---|---|---|
| Valuation Year | Improvements | Land | Total |
| 2023 | $165,000 | $60,000 | $225,000 |
| 2022 | $165,000 | $60,000 | $225,000 |
| 2021 | $165,000 | $60,000 | $225,000 |

(c) 2023 Vision Government Solutions, Inc. All rights reserved.